

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BECK SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 2036 |
| vs. ) | |
| ) | District Judge Gottschall |
| MANAGESOFT CORP., WMS ) | |
| INDUSTRIES, INC., ADP, INC. and ) | Magistrate Judge Schenkier |
| PENSON MEDIC, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In this action, Beck Systems, Inc. asserts claims of patent infringement against ManageSoft Corp. and several of ManageSoft's customers. Beck additionally asserts that ManageSoft's alleged infringement has continued unabated since the filing of this lawsuit, and that the infringement is willful. In aid to its defense to Beck's claim of willful infringement, ManageSoft has produced letters of counsel (both pre-dating and post-dating the commencement of suit) expressing opinions of noninfringement.

Whenever a defendant in a patent infringement suit relies on advice of counsel to fend off a claim of willful infringement, a question arises as to the extent to which that decision waives attorney-client privilege and work product immunity as to other related documents. In this case, prior to ManageSoft's decision to rely on advice of counsel as a defense to willfulness, the Court stated that if ManageSoft elected to do so, the Court would construe the scope of waiver created by that decision under the principles it announced in *Beneficial Franchise Co., Inc. v. Bank One N.A.*, 205 F.R.D. 212 (N.D. Ill. 2001). ManageSoft asserts that, in line with the Court's statement, in

addition to disclosing the advice of counsel on which it relies, ManageSoft also has produced other privileged or work-product documents to the full extent required under *Beneficial*.

In the motion currently before the Court (doc. # 124), Beck asserts that the recent decision in *In Re EchoStar Communications Corp.*, 448 F.3d 1294, 2006 WL 1149528 (Fed. Cir. 2006), has altered the applicable legal landscape concerning the extent to which reliance on advice of counsel to defend a claim of willful infringement waives the attorney-client privilege or work product protection for other documents on the same subject matter. Beck argues that the *EchoStar* opinion broadens the scope of waiver beyond that which this Court recognized in *Beneficial*, and thus expands the scope of otherwise privileged or work-product documents that ManageSoft must produce here. ManageSoft disagrees that the *EchoStar* opinion broadens the scope of waiver recognized in *Beneficial*; to the contrary, ManageSoft argues that in one particular respect, *EchoStar* narrows the scope of waiver adopted in *Beneficial*.

For the reasons that follow, we conclude that *EchoStar* does require modification of the approach that this Court took in *Beneficial*, both broadening in certain respects and narrowing in other respects the scope of the waiver recognized in that opinion. In Parts I and III of this opinion, we discuss the *Beneficial* and *EchoStar* decisions, and in particular, focus on the changes in the *Beneficial* approach that we deem required by *EchoStar*. In Part IV, we discuss the implications of those changes with respect to ManageSoft's obligation to produce attorney-client and work-product material on the same subject matter as the legal opinions on which it relies.

I.

We start with a discussion of the *Beneficial* decision as it pertains to the scope of waiver resulting from a decision to produce opinions of counsel in defense of a claim of willful

infringement. In that case, this Court held, as a threshold matter, that the subject matter waiver resulting from a decision to produce those opinions requires that a party "produce not only other communications and opinions of the same attorney, but also privileged information from other counsel involving the same subject." *Beneficial*, 205 F.R.D. at 217.

This Court then considered whether that waiver extended to material generated (1) after the commencement of suit, or (2) by trial counsel. After canvassing relevant case law, the Court concluded that the waiver would extend to both attorney-client and work-product materials prepared after the commencement of suit, even if the documents involved trial counsel. 205 F.R.D. at 218. The Court limited this waiver concerning materials involving trial counsel in one respect: work product materials from the trial attorney's files, which on their face did not indicate they were communicated to the defendants, were not subject to waiver if they failed to "contradict or cast doubt on the opinions" on which the defendants relied in their defense to willful infringement. *Id.* By contrast, this Court held that work product documents which did not indicate on their face that they were communicated to defendants were nonetheless subject to production if they contradicted or cast doubt on the opinions on which defendants relied. *Id.* We explained the rationale for that conclusion as follows:

> Not all information conveyed to a client is neatly reflected in a transmittal letter or in a memorandum specifically directed to the client. The practical reality is that if negative information was important enough to reduce to a memorandum, there is reasonable possibility that the information was conveyed in some form or fashion to the client.

*Id. See also, Dunhall Pharmaceuticals, Inc. v. Discus Dental, Inc.*, 994 F.Supp. 1202, 1205 (C.D. Cal. 1998).

## II.

We now turn to a discussion of *EchoStar*. In that case, the Federal Circuit considered a mandamus petition by EchoStar challenging the district court's ruling on waiver of attorney-client privilege and work-product immunity resulting from EchoStar's reliance on the advice of in-house counsel as a defense to willful infringement. The district court held that by virtue of that reliance, EchoStar waived attorney-client privilege and work-product immunity relating to the advice of any counsel regarding infringement, including attorney-client and work-product material from Merchant & Gould (EchoStar had obtained additional legal advice from Merchant & Gould with respect to the issue of patent infringement, and then decided not to rely upon it). The district court held that EchoStar's waiver of attorney-privilege and work-product protection required the production of all work product created by Merchant & Gould on the subject matter of the in-house counsel opinion, whether or not that work product was communicated to EchoStar. 448 F.3d at 1297. In reviewing the district court decision, the Federal Circuit examined separately the issues of waiver of attorney-client privilege and waiver of work-product immunity.

As to attorney-client privilege, the Federal Circuit explained that once a party announces reliance on advice of counsel to defend against willful infringement, "the attorney-client privilege is waived." 448 F.3d at 1299. The court observed that the "widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all of the communications relating to the same subject matter." *Id.* (quoting *Fort James Corp. v. Solo Cup, Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)). As a result, the court concluded that "when EchoStar chose to rely on the advice of in-house counsel, it waived the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications

4

with counsel other than in-house counsel, which would include communications with Merchant & Gould. See *Akeva LLC v. Mizuno Corp.*, 243 F. Supp. 2d 418, 423 (M.D. N.C. 2003)." *EchoStar*, 448 F.3d at 1299.

Turning to the scope of waiver of work-product immunity, the *EchoStar* court explained that "work product waiver only extends to 'factual' or 'non-opinion' work product concerning the same subject matter as a disclosed work product. 448 F.3d at 1302. The Federal Circuit acknowledged that "the line between 'factual' work product and 'opinion' work product is not always distinct, especially when, as here, an attorney's opinion may itself be 'factual' work product." *Id.* The court instructed that in assessing where that line should be drawn in a given case, district courts "should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product." *Id.* With that prefatory background, the federal circuit then examined three potential categories of work product that could be subject to waiver: "(1) documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter; (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; and (3) documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client." *Id.*

As to the first category, the federal circuit flatly stated that "when a party relies on the advice-of-counsel as a defense to willful infringement the party waives its attorney-client privilege for all communications between the attorney and client, including any documentary communications such as opinion letters and memoranda." *EchoStar*, 448 F.3d at 1302. Later in the opinion, the Court explained that when the privilege is waived, even if opinion work product is being communicated

5

to the client, that disclosure "become[s] evidence of a non-privileged, relevant fact, namely what was communicated to the client, . . ." 448 F.3d at 1303.

Before addressing the second and third categories of work product, the Federal Circuit commented that "scholars have noted that our prior opinions do not clearly define the scope of the work-product waiver. As a result, the district courts are split on just how far to extend that scope." *EchoStar*, 448 F.3d at 1302-03. The court then sought to provide guidance on that question: "we conclude that waiver extends to the third category but does not extend so far as the second." *Id.* at 1303.

As to work-product materials that were never communicated to the client, the second category of work product material identified in the opinion, the *EchoStar* court explained its rationale for holding that they fall outside the scope of the waiver. The court reasoned that unlike mental impression work product that is communicated to the client and thus becomes evidence of the fact of what information formed the client's state of mind (which is relevant to willfulness), "counsel's legal opinions and mental impressions that were not communicated do not acquire such factual characteristics and are, therefore, not within the scope of the waiver." *EchoStar*, 448 F.3d at 1303. The court explained that work product waiver "extends only so far as to inform the court of the *infringer's* state of mind." *Id.* (emphasis in original). "Thus, if a legal opinion or mental impression was never communicated to the client, then it provides little if any assistance to the court in determining whether the accused knew it was infringing, and any relative value is outweighed by the policy supporting the work- product doctrine." *Id.* at 1304.

As to the third category of work product, the federal circuit described it as falling "admittedly somewhere interstitially between the first and second [categories]." *EchoStar*, 448 F.3d at 1304.

The court posited that some documents within that category may themselves never have been conveyed to the client, but nonetheless may describe a communication between the attorney and the client. "Though it is not a communication to the client directly nor does it contain a substantive reference to what was communicated, it will aid the parties in determining what communications were made to the client and protect against intentional or unintentional withholding of attorney-client communications from the court." *Id.* Thus, the court held that documents falling within that category are discoverable, although they may require redaction to provide protection for work product within the memorandum or other document that was never communicated to the client. *Id.*

The Federal Circuit also addressed EchoStar's argument that the waiver does not extend to attorney-client and work-product materials generated after litigation begins. The court rejected that argument: "it is not the case when the advice is relevant to ongoing willful infringement, as long as that ongoing infringement is at issue in the litigation." *EchoStar*, 448 F.3d at 1303 n.4 (quoting *Akeva*, 243 F. Supp. 2d at 423 ("[O]nce a party asserts the defense of advice of counsel, this opens to inspection the advice received during the entire course of the alleged infringement")).

### III.

"[Q]uestions of privilege and discoverability that arise from assertion of the advice-of-counsel defense necessarily involve issues of substantive patent law," and thus are governed by Federal Circuit law. *EchoStar*, 448 F.3d at 1298. Thus, to the extent that *EchoStar* announced rules governing the scope of waiver stemming from the assertion of the advice of counsel defense that differ from those set forth by this Court in *Beneficial*, we are obliged to conform our approach to Federal Circuit law. That is particularly true in light of the evident intent of the Federal Circuit in *EchoStar* to provide trial courts with guidance as to the waiver of work-product protection for

7

documents that contain core work product that were not given to the client, and work product documents that discuss a communication between attorney and client but are not themselves communications to or from the client. *EchoStar*, 448 F.3d at 1302-03. Accordingly, having laid out the respective analyses in *Beneficial* and *EchoStar*, we consider the extent to which *EchoStar* requires revision of the approach we adopted in *Beneficial*.

*First*, we see no difference between the approach in *EchoStar* and *Beneficial* concerning the extension of waiver to include attorney-client privilege and certain work-product information created after litigation begins. In *Beneficial*, this Court rejected the proposition that the commencement of suit is a "bright line" cutoff after which there no longer is a waiver of attorney-client privilege or work-product protection for materials on the same subject matter as the opinion letters that are revealed. *Beneficial*, 205 F.R.D. at 218. Likewise, in *EchoStar*, the federal circuit rejected the proposition that the "waiver of opinions does not extend to advice and work product given after litigation began," in a case where "the advice is relevant to ongoing willful infringement, so long as that ongoing infringement is at issue in the litigation." *EchoStar*, 448 F.3d at 1303 n.4. In this case, Beck claims infringement by ManageSoft that is both willful and ongoing. Thus, the waiver created by ManageSoft's decision to rely on advice of counsel to defend against willfulness extends to attorney-client and certain work- product materials generated even after commencement of this suit.

*Second, EchoStar* did not disturb the approach we adopted in *Beneficial* which extends the waiver to attorney-client privilege and certain work-product material involving trial counsel. In *Beneficial*, we held that the waiver of attorney-client privilege and work- product protection extends to "documents and communications by trial counsel." *Beneficial*, 205 F.R.D. at 218. In *EchoStar*, the mandamus petition before the Federal Circuit dealt with an order that required production of

attorney-client and work-product material involving outside counsel (Merchant & Gould) who was different from the in-house counsel who prepared the opinions on which *EchoStar* relied, but who was not *EchoStar's* trial counsel. Thus, *EchoStar* cannot be read as disturbing this Court's approach in *Beneficial* that extends the waiver (at least in a case involving claims of ongoing infringement) to trial counsel.[1]

*Third*, *EchoStar* did not alter the approach we took in *Beneficial* with respect to the scope of waiver of the attorney-client privilege. In *Beneficial*, this Court held that the waiver of attorney-client privilege extended not only to other communications and opinions of the attorney rendering the opinion on which a defendant relies, but also attorney-client information from other counsel involving the same subject. *Beneficial*, 205 F.R.D. at 217. And, we held that this waiver extended to communications generated after the commencement of suit, and further extended to attorney-client communications between the defendant and trial counsel. *Id.* at 218. In *EchoStar*, the Federal

---

[1] In reaching this conclusion, we are mindful of the decision in *Indiana Mills & Manufacturing, Inc. v. Dorel Juvenile Group, Inc.*, No. 1:04 CV 01102, 2006 WL 1749413 (S.D. Ind. May 26, 2006), in which the court stated that "[t]here is no indication that the *EchoStar* court intended to extend this waiver to communication of trial counsel or to work product of trial counsel. In fact, that issue was not before court." *Id.* at *19. We agree that the fact scenario presented to the *EchoStar* court did not involve production of materials by trial counsel. That said, we part company with the *Indiana Mills* court with respect to whether the *EchoStar* court envisioned application of the waiver to trial counsel. In explaining the scope of waiver of attorney-client privilege and work product, *EchoStar*, 448 F.3d at 1299 1303 n.4, the Federal Circuit cited favorably to the *Akeva* decision, which held that "all opinions received by the client relating to infringement must be revealed, even if they come from defendants' trial attorneys, . . ." *Akeva*, 243 F.Supp. 2d at 423. We believe that the reasoning of the *EchoStar* opinion, as well as the supporting citation to *Akeva* in describing the scope of subject matter waiver both with respect to attorney-client privilege and work-product protection, indicates that the Federal Circuit would extend this waiver to all attorneys other than those who provided the advice on which the defendant relies, irrespective of whether the other attorneys are trial counsel.

ManageSoft argues that any suggestion in *EchoStar* that the waiver extends to trial counsel is *dicta*, since the case did not involve an issue of production of privileged or work-product material involving trial counsel, and that this Court therefore is not required to follow it (ManageSoft's Opp. at 3-4). Even assuming that reading, we find nothing in the *EchoStar* decision to suggest that if confronted with the issue, the Federal Circuit would exclude trial counsel from the scope of the waiver. Thus, even assuming ManageSoft's reading the *EchoStar*, and that of the Court in *Indiana Mills*, is correct, that reading would not require the Court to alter the approach it adopted in *Beneficial*, in which this Court applied the waiver to documents and communication involving trial counsel.

Circuit stated that "when *EchoStar* chose to rely on the advice of in-house counsel, it waived the attorney-client privilege with respect to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel, which would include communications with Merchant & Gould." 448 F.3d at 1299. As we have explained above, we read the *EchoStar* approach to attorney-client waiver as being consistent with the *Beneficial* opinion extending such a waiver to post-suit communications; and, as being consistent with (or at least not contradicting) the *Beneficial* decision's extension of the waiver to communications between a defendant and trial counsel.

*Fourth*, as for work-product protection, the result is more mixed. With respect to work product contained in documents transmitted between the attorney and client (the first category identified in *EchoStar*), there is no difference: work-product immunity is waived. As for the other categories of work product addressed in *EchoStar*, we conclude that the opinion both expands and contracts, in certain respects, the scope of waiver that this Court recognized in *Beneficial*.

With respect to documents setting forth an attorney's mental impressions that were never communicated to the client (the second *EchoStar* category), the Federal Circuit provides broader protection than did this Court's opinion in *Beneficial*. In *Beneficial*, this Court held that work product contained in documents that on their face do not indicate that they were ever sent to the client must be produced only if they contradict or cast out on the disclosed opinions; otherwise, they are outside the scope of the waiver. *Beneficial*, 205 F.R.D. at 218. In *EchoStar*, the court announced a different approach: the decisive consideration is not whether the work-product information contradicts or casts doubt on the disclosed opinions, but instead whether the document shows that the work-product information was conveyed to the client. If so, then the work-product protection

is waived. If not, then the work product need not be produced. Thus, work product that a defendant never received, but would have to produce under *Beneficial* because it casts doubt on a disclosed opinion, is not subject to production under the *EchoStar* approach. In this respect, the *EchoStar* opinion imposes a waiver on work product material that is narrower than the one that this Court applied in *Beneficial*.

As to documents in an attorney's file that were not actually communicated to the client but contain a reference to or description of communications between an attorney and client (the third category of work product information analyzed in *EchoStar*), the *EchoStar* waiver is broader than that imposed by this Court in *Beneficial*. In *Beneficial*, the Court required work-product documents in an attorney's file to be produced only if they contain information that contradicts or casts doubt on the opinions on which the defendant relies. *Beneficial*, 205 F.R.D. at 218. By contrast, *EchoStar* requires documents that were not conveyed to the client, but that describe a communication of work-product information to the client, to be produced. *EchoStar*, 448 F.3d at 1304. Unlike the case under *Beneficial*, that production is required even if the document refers to a specific work product communication that does not contradict the legal advice on which the defendant relies.

## IV.

In light of the foregoing analysis, we conclude that the *EchoStar* opinion requires that the parties reassess the scope of ManageSoft's production of attorney-client privilege or work product materials on the same subject matter as the legal advice on which it relies for a defense to willful infringement. That reassessment must cover the following points.

*First*, ManageSoft must review its privilege log, and any documents generated by trial counsel on the subject matter of the opinion letters that may not be on the privilege log, in order to

determine whether it has produced the full scope of what is required under *EchoStar*. In making that determination, ManageSoft may not assert attorney-client privilege or work product protection for the following categories of documents that relate to the same subject matter as the legal advice on which they rely: (1) communications between ManageSoft and any counsel (including trial counsel), including communications which conveyed to the ManageSoft work-product information; and (2) documents from the files of ManageSoft's attorneys (including trial counsel) that were not conveyed to ManageSoft, but that discuss work product information that was communicated to ManageSoft. With respect to this latter category, ManageSoft may not withhold documents on the ground that the work-product information fails to contradict or cast doubt on the legal advice on which ManageSoft relies; however, ManageSoft may redact any references to work-product material that was not communicated to ManageSoft. *EchoStar*, 448 F.3d at 1304. As recognized both in *EchoStar* and *Beneficial*, the time scope of this waiver is not limited to the period ending with the commencement of suit, but continues to include the affected attorney-client and work-product materials generated after suit commenced. As a matter of convenience, the Court will require ManageSoft's search to extend through the period ending June 30, 2006.[2]

---

[2] In its submission, ManageSoft argues that requiring production of these materials involving trial counsel could require it to produce the most sensitive matters of litigation and trial strategy, as well as settlement strategy (ManageSoft's Opp. at 6-7). As a preliminary matter, we note that this Court's approach in *Beneficial* required production of privileged and certain categories of work-product materials involving trial counsel that were generated after commencement of suit. Thus, the concern expressed by ManageSoft was not one created by *EchoStar*, but is one that ManageSoft already has confronted – at least, if it has fully complied with *Beneficial*, as ManageSoft claims it has (ManageSoft's Opp. at 5-8).

In any event, we do not believe that work-product material on the subject matter of the legal advice on which ManageSoft relies can be cloaked from the disclosure required under *EchoStar* (or *Beneficial*) merely by labeling it as material being provided to assist the client in assessing settlement. By the same token, the waiver is not so broad as to allow Beck a window generally into ManageSoft's trial strategy or settlement positions. For the waiver to apply, there must be a nexus between the work-product documents and the subject matter of the legal advice on which ManageSoft relies, and there must be something in the documents to indicate that the work-product information was communicated to the ManageSoft (so as to place the document in the third *EchoStar* category rather than the second one). To the extent

*Second*, ManageSoft and Beck must review the documents produced to date by ManageSoft to determine whether any of them fall into the second category of documents recognized by *EchoStar*: work-product documents containing opinions or conclusions that contradict or cast doubt on the disclosed opinions, but which do not reflect that they were conveyed to the client. Under *Beneficial*, ManageSoft was required to produce those types of documents; under *EchoStar*, they are protected from disclosure. The Court will treat the earlier production by ManageSoft of those documents as inadvertent and without waiver of work product protection. Accordingly, to the extent that ManageSoft has produced any documents that fall within this category, Beck must return them to ManageSoft, and shall not retain any copies of them or make any further use of them.

## CONCLUSION

For the foregoing reasons, Beck's motion to compel discovery of communications relevant to advice-of-counsel defense (doc. # 124) is granted in part and denied in part. By August 4, 2006, ManageSoft shall produce any additional privileged or work product documents that fall within the scope of the waiver as set forth in this opinion. By that same date, Beck shall return to ManageSoft any documents that exceed the scope of the waiver as recognized in *EchoStar*, in line with the Court's ruling above. The Court denies without prejudice Beck's request for leave to take a

---

that a document contains some material that is subject to production and some that is not, the latter may be redacted. *EchoStar*, 448 F.3d at 1304.

13

supplemental deposition of ManageSoft based on further documents produced; we will address that question separately if the need arises in the future.

       **ENTER:**

       _/s/ Sidney I. Schenkier_
       **SIDNEY I. SCHENKIER**
       **United States Magistrate Judge**

**Dated: July 14, 2006**